IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| BRANDON JAMES LONG, | |
| Plaintiff, | |
| v. | Case No. 5:18-cv-3189-HLT |
| SONYA LATZKE, et al., | |
| Defendants. | |

## MEMORANDUM AND ORDER

Plaintiff Brandon James Long brings this 42 U.S.C. § 1983 action pro se[1] and alleges that Kansas Department of Corrections ("KDOC") staff and Corizon LLC medical personnel violated his Eighth Amendment rights while he was incarcerated at the Lansing Correctional Facility ("LCF") in Lansing, Kansas. The crux of Long's allegations is that Defendants were deliberately indifferent to his orthopedic issues and stair restriction by moving him to a second-floor room. During the move, he fell down a set of stairs that resulted in injuries and, after his fall, Defendants deprived him of a wheelchair and walker.

KDOC defendants—Unit Team Manager ("UTM") Sonya Latzke and Lieutenant John Coleton—move for dismissal in part and summary judgment in part on Long's claims. They contend the Eleventh Amendment bars Long's official capacity claims and that qualified immunity shields them from Long's individual capacity claims. The Court agrees and grants the motion.

---

[1] The Court is mindful of Long's pro se status and liberally construes his pleadings. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But he must still comply with procedural rules. Here, Long improperly exceeds the page limit, fails to directly respond to the statement of facts, inserts arguments into his responses, and attempts to dispute facts by relying on hearsay, speculation, and non-record evidence. The Court is sympathetic to Long's situation and recognizes that he is trying to litigate this case, but Long must follow the rules.

## I. BACKGROUND

The parties agree on the following overarching facts that are relevant to this motion. Long was an inmate housed at LCF from May 8, 2012 until his release on February 26, 2019. In September 2015, Long began working in private industry at Zephyr, as part of a work release program. Inmates working at Zephyr were primarily housed in LCF's "T Unit" with overflow in "R Unit." As bed space became available in T Unit, private industry inmates housed in R Unit were transferred to T Unit. In July 2017, Long had a bottom bunk on the first floor of R Unit and had been there for almost two years. On July 12 or 13, 2017, a bed became available in T Unit, and Long was transferred. T Unit was below the main level and required Long to use a 30-step staircase.

After the move, Long complained to UTM Latzke, who was assigned to R, S, and T Units. Her duties included overseeing the employment and case management of inmates working in private industry. Long requested to be moved back to R Unit due to his limp. Because he had no medical restrictions at that time, UTM Latzke told him she was unable to request the change. Then, on July 13, 2017, Lisa Powell, an Advanced Practice Registered Nurse, assessed Long and noted his congenital lower extremity deformity, abnormal gait because of bunions, and a propensity for knee pain. She restricted Long to bottom bunks and no more than one flight of stairs or ten steps.

On Friday, July 14, 2017, Long returned to UTM Latzke and informed her of his medical restriction. She verified the restriction and took some action. After this exchange, Long reported to work, which required him to ascend the 30-step staircase. When he returned late that evening, UTM Latzke had left for the weekend. Long then saw that he was scheduled to move to a bottom bunk on R Unit's second floor on Monday morning.

Lt. Coleton was on duty Monday morning. He supervised living unit moves scheduled by a UTM, including Long's move. During the move, Long fell down several stairs in the R Unit on his third or fourth trip to retrieve his belongings from a cart to take them to his second-floor room. Nurses examined him at approximately 4:00 a.m., and he reported significant pain in his neck, back, and legs with numbness and tingling. Lt. Coleton had an ambulance called, and Long was transported to the hospital. Long was diagnosed with muscle contusions. Long returned to LCF later that morning.

Over the ensuing months, Long reported continued pain and leg and back spasms and was proscribed pain medication, physical therapy, electric stimulation, and a lumbar x-ray, which did not reflect significant spinal degeneration. He was prescribed the use of a cane or walker throughout. He brought this § 1983 action in July 2018 and was released on February 26, 2019.

## II.   ANALYSIS

Long alleges Eighth Amendment deliberate indifference claims against UTM Latzke and Lt. Coleton in their official and individual capacities. UTM Latzke and Lt. Coleton contend the Eleventh Amendment bars Long's official capacity claims and move to dismiss them under Rule 12(b)(1). They also argue that qualified immunity shields them from Long's individual capacity claims and move for summary judgment on those claims under Rule 56. Docs. 33, 43.[2] For the reasons stated below, the Court agrees with UTM Latzke and Lt. Coleton.

---

[2] UTM Latzke and Lt. Coleton originally moved to dismiss all Long's claims and for summary judgment in the alternative. Doc. 33. In their reply, they urge the division. Doc. 43 at 21. The Court agrees with the division because it considers the Martinez Report, *see infra*, in resolving Long's individual capacity claims and lacks jurisdiction over the official capacity claims. *See McDiffett v. Nance*, 2019 WL 4736951, at *3 (D. Kan. 2019) (applying summary judgment standard because the court considered materials outside of the pleadings—namely, the Martinez Report—when resolving the alternative motion); *cf. Swoboda v. Dubach*, 992 F.2d 286, 290 (10th Cir. 1993) ("In determining whether a plaintiff has stated a claim, the district court may not look to the Martinez report, or any other pleading outside the complaint itself, to refute facts specifically pled by a plaintiff, or to resolve factual disputes.").

### A.     Dismissal of Official Capacity Claims

Long sued UTM Latzke and Lt. Coleton in their official capacities as state employees of KDOC for monetary damages and injunctive relief. UTM Latzke and Lt. Coleton contend they are entitled to Eleventh Amendment immunity on these claims. Eleventh Amendment immunity is appropriately considered under Rule 12(b)(1) and protects nonconsenting states from federal lawsuits by private individuals. *See Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002) (noting that "an assertion of Eleventh Amendment immunity concerns the subject matter jurisdiction of the district court"); *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). The immunity protects not only states, but also state agencies and state officials sued in their official capacities. *Graham*, 473 U.S. at 169.

Long's official capacity claims against UTM Latzke and Lt. Coleton are de facto claims against KDOC, which is an agency of the State of Kansas and protected by Eleventh Amendment immunity. *See e.g.*, *Jones v. Courtney*, 466 F. App'x 696, 699 (10th Cir. 2012); *Payne v. McKune*, 2007 WL 60941, at *1-2 (D. Kan. 2007) (finding Eleventh Amendment immunity bars the plaintiff's official capacity claims asserted against KDOC employees). Thus, Long's official capacity claims against UTM Latzke and Lt. Coleton are barred unless he can establish an exception to this immunity.

Long argues that KDOC waived its immunity by (1) withholding and concealing documents from the Martinez Report and (2) receiving federal funding. But Long does not cite case law holding that the Eleventh Amendment can be waived for these reasons. Instead, the case law indicates that Eleventh Amendment immunity is robust and is defeated only in limited circumstances that are not present in this case. *See Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012) (identifying three circumstances: (1) a state consents; (2) Congress

abrogates immunity under Section 5 of the Fourteenth Amendment; or (3) a plaintiff seeks prospective relief against an ongoing violation of federal law).

Here, Long has not shown that the State of Kansas consented to suit by statutory or constitutional provision or that it implicitly consented to suit by voluntarily participating in a federal program when Congress expressly conditioned state participation in that program on the state's consent to suit in federal court. *Arbogast v. Kan. Dep't of Labor*, 789 F.3d 1174, 1182 (10th Cir. 2015). He has not shown that Congress abrogated this immunity when it enacted § 1983. *Ruiz*, 299 F.3d at 1181 (noting that § 1983 did not abrogate the states' Eleventh Amendment immunity). Lastly, Long has not shown that he seeks prospective relief to enjoin an ongoing violation. Instead, Long is no longer incarcerated with KDOC, his claims against UTM Latzke and Lt. Coleton stem from a July 2017 injury, and no facts suggests these claims are ongoing. Thus, an injunction is not appropriate.

Accordingly, the Court finds that Eleventh Amendment immunity bars Long's official capacity claims against UTM Latzke and Lt. Coleton and dismisses them without prejudice.[3]

### B.   Summary Judgment on Individual Capacity Claims

Long also sues UTM Latzke and Lt. Coleton in their individual capacities and seeks monetary damages. UTM Latzke and Lt. Coleton contend they are entitled to summary judgment on these claims under Rule 56 because qualified immunity protects them. Summary judgment is appropriate where the moving party demonstrates that "there is no genuine dispute as to any material fact" and it is "entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In applying

---

[3]   Alternatively, Long's § 1983 claims against UTM Latzke and Lt. Coleton in their official capacities fail under Rule 12(b)(6) because he cannot prove an element of his prima facie case: that a <u>person</u> deprived him of his federally protected rights. The Supreme Court has held that states, state agencies, and—except in actions for prospective relief—state officials sued in their official capacities are not "persons" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 n.10 (1989).

this standard, courts must view the facts and any reasonable inferences that might be drawn therefrom in the light most favorable to the non-moving party. *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994). "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The Court must apply this procedural framework to qualified immunity. Qualified immunity protects government officials from civil liability when the official's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (citation omitted). Once a defendant asserts the qualified-immunity defense, the plaintiff must show that: (1) the defendant violated his constitutional rights, and (2) the constitutional right was clearly established at the time of the violation. *Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir. 2019). The Court may address the prongs in either order. *Id.*

Here, Long alleges that UTM Latzke was deliberately indifferent to his serious medical needs and Lt. Coleton was deliberately indifferent to his safety. A claim for deliberate indifference involves two components: (1) a deprivation that was "sufficiently serious," and (2) prison officials acted with "deliberate indifference." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citation omitted). UTM Latzke and Lt. Coleton argue that the uncontroverted facts (taken from the Martinez Report[4] and affidavits) show that they did not violate Long's clearly established Eighth Amendment rights, so qualified immunity protects them from his claims. The Court agrees.

---

[4] KDOC has filed a report (Doc. 24), in accordance with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978), documenting the results of an investigation and attaching supporting affidavits, records, and other official materials. The Martinez Report is thus part of the record and, absent valid challenge, may be treated as providing uncontroverted facts. *Hartz v. Sale*, 687 F. App'x 783, 785 (10th Cir. 2017). Long observes that the Martinez

6

1.     **UTM Latzke[5]**

The Court starts with Long's claims against UTM Latzke and finds that qualified immunity shields her from these claims. Long alleges that UTM Latzke was deliberately indifferent to his medical needs because she interfered with his prescribed treatment. *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (recognizing that indifference can occur by prison guards "intentionally interfering with treatment once prescribed"). The Court starts with the first prong of the qualified-immunity analysis and finds that no reasonable jury could find that UTM Latzke violated Long's constitutional rights.

Long arguably asserts two theories of liability against UTM Latzke. First, Long contends that UTM Latzke was responsible for his initial move from R Unit to T Unit, which required him to use a 30-step staircase. It is undisputed that Long did not have a stair restriction at the time of this move and that UTM Latzke told him when he complained to her after the move that he could not move to a different room absent a medical restriction. The Court finds that no reasonable jury could conclude that UTM Latzke was deliberately indifferent to Long's medical needs when he was moved to T Unit or when she declined to move him after he complained about the move. He

---

Report was filed late and argues it is deficient. Because the allegedly missing information does not change the outcome of this motion, the Court does not order KDOC to supplement the report or show cause.

[5]   Long initially argues that UTM Latzke is not entitled to qualified immunity because the defense is not available to individuals performing purely ministerial duties and not exercising discretion. *See Cummings*, 913 F.3d at 1241 ("Qualified immunity only shields an official in the exercise of his or her discretion."). He explains that UTM Latzke lost any discretion she had after she confirmed his medical restriction because procedure mandated his immediate move. He cites Internal Management Policy and Procedure ("IMPP") 10-121D(I)(B), which states that "all treatment and care by personnel other than [medical] shall be performed according to written or direct orders signed by personnel authorized by statute to give such orders." But IMPP 10-121D(I)(B) does not specify precise actions. Rather, it vests personnel with discretion. Here, IMPP vested UTM Latzke with discretion as to the manner of conveying the medical restriction and vested the UTM responsible for moving Long with discretion on where to place Long in compliance with his medical restrictions. *See Cummings*, 913 F.3d at 1242 (explaining that a law or policy that "fails to specify the precise action that the official must take in each instance creates only discretionary authority; and that authority remains discretionary however egregiously it is abused" (quoting *Davis v. Scherer*, 468 U.S. 183, 196 n.14 (1984)). Thus, qualified immunity is available.

7

did not have a stair restriction at the time of the move or at the time of his complaint to her and, thus, was not moved or housed in violation of prescribed medical treatment. *See, e.g.*, *Worrell v. Bruce*, 296 F. App'x 665, 668-69 (10th Cir. 2008) (holding an officer who denied the plaintiff the use of an elevator to get to the eating hall despite the plaintiff's protests could not be deliberately indifferent to a two-flight stair restriction with which his actions were facially compliant).

Second, Long contends that UTM Latzke violated his constitutional rights when she required him to move to a second-floor room after confirming his stair restriction. The properly supported facts indicate that after initially complaining to UTM Latzke about his move to T Unit, Long had a medical visit and received a bottom bunk restriction and a stair restriction limiting him to no more than 10 stairs. He informed UTM Latzke of his restrictions, she confirmed the restrictions, and she informed the UTM in charge of bed space for inmates with medical restrictions of his new restrictions. The same day, Long was scheduled to move to a bottom bunk on the second floor of R Unit. The move was scheduled for Monday, July 17, 2017.

The Court again finds that no reasonable jury could conclude that UTM Latzke was deliberately indifferent to Long's medical needs after he told her about his medical restrictions. The evidence indicates that UTM Latzke confirmed the restriction by checking Long's file and then promptly notified the appropriate UTM of the restriction. She had nothing further to do with Long's placement on the second floor of R Unit. Confirming a medical restriction and notifying appropriate personnel is not deliberate indifference.

Long argues that UTM Latzke did not notify anyone after confirming the restriction and contends that she was responsible for his second move. He questions how UTM Latzke could be assigned to R, S, and T Units but not be responsible for his move from T Unit to R Unit. But he does not offer any evidence that she failed to contact anyone. And the record indicates that UTM

8

Latzke was the UTM assigned to R, S, and T Units at LCF and her duties included overseeing the employment and case management of inmates working in private industry. Thus, UTM Latzke had oversight responsibilities for Long because he was in these units and working in private industry. But her responsibilities did not include bed space assignment for inmates with medical restrictions. Rather another UTM had that responsibility. Long does not cite any record evidence contradicting this fact. Instead, he offers hearsay and speculation. Accordingly, the record evidence indicates that a different UTM was responsible for bed space assignments for inmates with medical restrictions and that UTM Latzke did not assign Long to the second-floor room in R Unit.[6]

Turning to the second step of the qualified-immunity analysis and assuming Long can demonstrate a constitutional violation, he has not shown it was clearly established in July 2017. He does not identify a Supreme Court case, a Tenth Circuit case, or a "robust consensus of cases of persuasive authority" holding that a correction officer acting under similar circumstances violated the Eighth Amendment. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741-42 (2011) (internal quotation omitted); *Cummings*, 913 F.3d at 1239 (requiring an on-point Supreme Court or published Tenth Circuit case or the weight of authority clearly establishing an Eighth Amendment violation in the circumstances at hand). Instead, he argues that "a case with precisely the same facts is highly unlikely and unreasonable." Doc. 40 at 67. This is not enough to meet his burden.

---

[6] Even if UTM Latzke was responsible for moving Long to the second-floor room, she accommodated Long's bottom bunk restriction and his request to return to R Unit within a few days. Long does not offer evidence that there was an available room on the first floor or otherwise demonstrate that UTM Latzke intentionally disregarded his stair restriction or otherwise intentionally disregarded his medical needs. Thus, he has not come forward with evidence of a culpable mind and, at best, shows negligence. *See Hood v. Prisoner Health Servs., Inc.*, 180 F. App'x 21, 26 (10th Cir. 2006) (holding that negligent record keeping resulting in a housing assignment inconsistent with the plaintiff's medical restrictions was not deliberate indifference); *Redding v. Georgia*, 557 F. App'x 840, 844 (11th Cir. 2014) (affirming dismissal because, although it may have been negligent to assign the plaintiff a bunk contrary to his medical profile, the plaintiff had not alleged the requisite culpable state of mind for deliberate indifference). This is not enough for a constitutional violation.

Accordingly, UTM Latzke is protected by qualified immunity and entitled to summary judgment in her favor on these claims.

### 2. Lieutenant Coleton[7]

The Court also concludes that qualified immunity shields Lt. Coleton from Long's individual capacity claims. Long contends that Lt. Coleton demonstrated deliberate indifference to Long's safety when Lt. Coleton required him to move to the second-floor room. This claim requires Long to show that Lt. Coleton knew that Long "face[d] a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. The Court again exercises its discretion and starts with the first prong of the qualified-immunity analysis.

Here, no reasonable jury could find that Lt. Coleton violated Long's constitutional rights based on the properly supported and uncontroverted facts. Lt. Coleton did not have the authority to decide or schedule inmate living assignments. He was only authorized to stop a move for drastic or life-threatening circumstances. Lt. Coleton does not recall any specific conversations with Long about the move or any circumstances preventing Long from moving. Instead, Lt. Coleton had often and recently seen Long using stairs coming and going from work (which Long concedes). He was not aware of Long's stair restriction and did not recall other circumstances preventing Long's move. After Long fell, Lt. Coleton had paramedics transport Long to the emergency room for care. On these facts, a reasonable jury could not find that Lt. Coleton demonstrated deliberate indifference to Long's safety.

---

[7] Long again attempts to invoke the ministerial exception to qualified immunity. Long argues that protocol required Lt. Coleton to verify his medical restriction with the clinic and cites IMPP 10-121D(I)(B). *See Cummings*, 913 F.3d at 1241 ("Qualified immunity only shields an official in the exercise of his or her discretion."). But even under Long's unsupported facts, Lt. Coleton retained discretion on the move, how to conduct it, and whether it should be conducted. He exercised discretion and is entitled to assert this defense.

Long challenges this conclusion and contends that Lt. Coleton, as the highest ranking official at the time, had the authority to stop or at least suspend the move until UTM Latzke returned that morning. Long also alleges that he informed Lt. Coleton of his stair restriction and showed him his limp, explaining that the move would be painful and that he could fall. Long explains that he urged Lt. Coleton to follow protocol and verify the restriction with the clinic, but Lt. Coleton responded that:

> I don't make the moves, the unit team managers do that. I'm just here to make sure it gets done. . . . I don't know why they do what they do sometimes, but you gotta move. . . . Look, I'm not calling the clinic. You gotta move. If you don't, I gotta tell you to cuff up.[8]

Long concludes that Lt. Coleton was deliberately indifferent to Long's safety by not contacting the clinic and recklessly disregarding his complaints of pain and excessive and obvious risk of substantial injury.

But even assuming these facts are supported and properly before the Court, the Court still concludes that qualified immunity shields Lt. Coleton because Long does not offer evidence from which a reasonable jury could find that Lt. Coleton was subjectively aware of a substantial risk of serious harm and disregarded it. Long had been at the prison for years with no stair restriction, and his job and temporary residence in T Unit required him to use stairs. Lt. Coleton knew of Long's longstanding limp and the number of stairs he traversed anyway. Lt. Coleton allowed Long to use a cart and the elevator for portions of the move (Doc. 40 at 47) and he did not require Long to carry his items as Long was permitted to enlist the aid of a friend. Even if Lt. Coleton was negligent (or grossly negligent) in not contacting the clinic, Long describes a single incident "involving common penological objectives (the administration of inmate movement and cell space within the

---

[8] Long explains that the reference to "cuff up" meant that Long would be handcuffed in preparation to go to segregation.

11

facility)." *Walker v. Stop*, 2018 WL 2722790, at *4 (D. Kan. 2018). Considering Lt. Coleton's awareness of Long's previous stair use and limited authority to stop a move and the circumstances of the move, Long has not come forward with evidence from which a reasonable jury could find that Lt. Coleton acted with deliberate indifference to Long's safety. *See id* (dismissing deliberate indifference claims when the defendants made the plaintiff use the stairs in violation of his stair restriction, which was painful, and ordered him to pack up his cell in the middle of the night, when he could barely walk); *Hall v. Moore*, 2015 WL 9946410, at *10 (N.D. Fla. 2015) (escorting the plaintiff up the stairs to his cell pursuant to protocol after learning of a stair restriction was not deliberate indifference).

Even if Long demonstrated a constitutional violation, he again fails to satisfy the second step of the qualified-immunity analysis and show it was clearly established in July 2017. He does not cite controlling or persuasive case law. *See Ashcroft v. al-Kidd*, 563 U.S. at 741-42. Instead, he argues that "a case with precisely the same facts is highly unlikely and unreasonable." Doc. 40 at 67. The Court cannot excuse this shortcoming because it is Long's burden to overcome qualified immunity. Thus, Lt. Coleton is protected by qualified immunity and entitled to summary judgment in his favor on these claims

## III. CONCLUSION

In sum, the official capacity claims against UTM Latzke and Lt. Coleton are barred by Eleventh Amendment immunity. And they are protected from the individual capacity claims by qualified immunity. The Court is sympathetic to Long and his current mental and physical situation, but the Court must apply the rules and standards as set forth by controlling precedent.

THE COURT THEREFORE ORDERS that the Motion to Dismiss or, in the Alternative, for Summary Judgment (Doc. 33) filed by UTM Latzke and Lt. Coleton is GRANTED. The Court

DISMISSES WITHOUT PREJUDICE Long's official capacity claims against UTM Latzke and Lt. Coleton and enters SUMMARY JUDGMENT in favor of UTM Latzke and Lt. Coleton with respect to Long's individual capacity claims against them.

IT IS SO ORDERED.

Dated: December 14, 2020        /s/ *Holly L. Teeter*
                                HOLLY L. TEETER
                                UNITED STATES DISTRICT JUDGE